**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

VERDA HEALTHCARE, INC.
7755 Center Ave., Suite 1200
Huntington Beach, CA 92647;

VERDA HEALTH PLAN OF TEXAS, INC.
8388 W. Sam Houston Parkway S., Suite 282
Houston, TX 77072;

VERDA HEALTH PLAN OF ARIZONA, INC.
2051 W. Chandler Blvd., Suite 9
Chandler, AZ 85224,

Plaintiffs,

v.

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES
200 Independence Avenue, S.W.
Washington, DC 20201;

ROBERT F. KENNEDY, JR., in his official capacity as Secretary of the U.S. Department of Health and Human Services
200 Independence Avenue, S.W.
Washington, DC 20201;

CENTERS FOR MEDICARE AND MEDICAID SERVICES
7500 Security Boulevard
Baltimore, MD 21244;

MEHMET OZ, M.D., in his official capacity as Administrator, Centers for Medicare and Medicaid Services
7500 Security Boulevard
Baltimore, MD 21244

Defendants.

Case No.

## COMPLAINT

Plaintiffs Verda Healthcare, Inc. ("Verda Healthcare"), Verda Health Plan of Texas, Inc. ("Verda Texas"), and Verda Health Plan of Arizona, Inc. ("Verda Arizona," and with Verda Healthcare and Verda Texas, "Verda" or "Plaintiffs") bring this suit against the U.S. Department of Health and Human Services ("HHS"), Robert F. Kennedy, Jr., in his official capacity as Secretary of HHS, the Centers for Medicare and Medicaid Services ("CMS"), and Mehmet Oz, M.D., in his official capacity as Administrator of CMS.

## INTRODUCTION

1. Verda Healthcare and its two Medicare Advantage Organizations ("MAOs"), Verda Texas and Verda Arizona, bring this action under the Administrative Procedure Act ("APA") to remedy CMS's unlawful calculation and assignment of their 2027 Medicare Advantage Star Ratings. The Star Rating system is the principal mechanism by which CMS rates the quality of MAOs like Verda Texas and Verda Arizona. CMS assigns each MAO a rating on a five-star scale by assessing and then combining ratings on more than 40 individual "measures." An MAO's overall Star Rating has far-reaching consequences. It determines whether the MAO receives quality bonus payments and how large a share of its savings CMS returns to it as rebates; it shapes beneficiaries' enrollment choices on CMS's Medicare Plan Finder; and, if it remains low, it can lead to a "low performing" warning label or termination of the MAO's contract.

2. In assigning 2027 Star Ratings, CMS acted unlawfully in three respects. First, as the U.S. District Court for the Southern District of Georgia held earlier this year in *Clover Insurance Company v. U.S. Department of Health & Human Services*, CMS calculated the

ratings using measures and technical specifications that were never adopted through the notice-and-comment rulemaking that the Medicare Act requires. Second, as the *Clover* court also held, CMS relied on measures based on data that Congress did not authorize the agency to use in calculating Star Ratings. Third, under a policy it has never adequately explained, CMS assigns Star Ratings to MAOs even when it lacks sufficient data to rate up to 49% of the individual measures, which is arbitrary and capricious.

3. Each of these errors infected Verda Texas's 2027 Star Rating. Verda is a new, minority-owned start-up that predominantly serves underserved communities, and 2027 is the first year that Verda Texas, which began offering benefits in 2024, received a Star Rating. Verda Texas was first eligible to receive a Star Rating in 2026, but had insufficient data for CMS to assign a rating. The next year, even though Verda Texas still had insufficient data for one-third of the measures and barely reached the threshold for others, CMS calculated its Star Rating, and it did so by relying on measures that *Clover* held to be unlawful. The result was an overall rating of 2 stars, despite Verda Texas earning 4 or 5 stars on many of the measures CMS did score. Verda Arizona, which began offering benefits in 2026 and has almost no data of its own, is treated as having the same rating.

4. As a result, Verda stands to lose approximately $20 million in revenue compared to last year. Beyond this monetary harm, the 2027 Star Rating has tainted Verda's reputation in the eyes of current members, prospective enrollees, and healthcare providers, resulting in millions of dollars in additional losses in reputational harm and membership growth. With these combined hits, driven by a Star Rating that does not reflect its plans' quality, Verda faces potentially devastating consequences for the organization and its beneficiaries.

5. The Court should hold unlawful and set aside the 2027 Star Ratings assigned to Verda Texas and Verda Arizona. Because CMS cannot calculate a lawful Star Rating for Verda Texas without the unlawful measures, the Court should direct CMS to treat Verda Texas and Verda Arizona under rules for plans that cannot be rated for 2027 and assign them the corresponding default rating and quality bonus payment.

## PARTIES

### A. Plaintiffs

6. Verda Healthcare, Inc. is a corporation organized under the laws of the State of California with its principal place of business in Huntington Beach, California. Verda Healthcare is the parent organization for Verda Texas and Verda Arizona.

7. Verda Health Plan of Texas, Inc. is a corporation organized under the laws of the State of Texas with its principal place of business in Houston, Texas.

8. Verda Health Plan of Arizona, Inc. is a corporation organized under the laws of the State of Arizona with its principal place of business in Chandler, Arizona.

### B. Defendants

9. Defendant U.S. Department of Health and Human Services is a federal cabinet agency that houses the Centers for Medicare and Medicaid Services, among other agencies. HHS is a department of the executive branch of the United States government and is an agency within the meaning of 5 U.S.C. § 551. HHS's governmental activities occur nationwide.

10. Defendant Robert F. Kennedy, Jr. is Secretary of HHS and is the agency's highest-ranking official. He is charged with the supervision and management of all decisions and

actions of the agency. Kennedy's governmental activities occur nationwide. He is sued in his official capacity.

11. Defendant Centers for Medicare and Medicaid Services is a federal agency within HHS and is designated by HHS to be the agency responsible for administering and overseeing the Medicare program. CMS's governmental activities occur nationwide.

12. Defendant Mehmet Oz, M.D., is the Administrator of CMS. Oz's governmental activities occur nationwide. He is sued in his official capacity.

## JURISDICTION AND VENUE

13. This action arises under the Administrative Procedure Act, 5 U.S.C. §§ 701–06 ("APA"). The Court has jurisdiction under 28 U.S.C. § 1331.

14. Jurisdiction is proper because there is no administrative mechanism through which Plaintiffs may obtain review of the CMS actions challenged in the Complaint. *See* 42 C.F.R. § 422.260(c)(3) (precluding administrative review of challenges to "the methodology for calculating the star ratings," "the set of measures included in the star rating system" or "the methodology for determining QBP determinations for low enrollment contracts and new MA plans").

15. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e)(1). Defendants are United States agencies or officers sued in their official capacities. Defendants HHS and Kennedy reside in this District.

## FACTS

**A. <u>Verda's Background</u>**

16. Verda seeks to improve the health and well-being of the people living in the communities it serves. To that end, Verda offers Medicare Advantage plans designed for people 65 and older who live in underserved ethnic communities, especially Asian-American, Hispanic-American, and Arab-American communities. Although individuals of any ethnic, demographic, or economic background may enroll, Verda's plans are tailored to these communities. As a minority-owned company founded by health care professionals and managed care industry veterans, Verda is uniquely suited to serve historically underserved communities with culturally sensitive care.

17. Verda serves beneficiaries in Texas (through Verda Texas) and Arizona (through Verda Arizona). In addition to benefits under Medicare Parts C and D, Verda offers its beneficiaries supplemental benefits not covered by Medicare, at no extra cost.

18. In 2023, Verda Texas entered into Contract No. H5163 with CMS, through which it serves approximately 3,800 beneficiaries throughout Texas. Verda Texas began offering benefits on January 1, 2024, in Fort Bend, Harris, and Montgomery counties. Verda Texas later expanded to serve Dallas and Collin counties in 2026, and for enrollment year 2027 further expanded to Tarrant and Denton counties.

19. In 2025, Verda Arizona entered into Contract No. H2630 with CMS, through which it serves approximately 200 beneficiaries throughout Maricopa county since January 1, 2026, with plans to expand into Pima County in 2027.

20. The 2027 Star Ratings, issued in October 2026, were the first for which Verda Texas received a Star Rating based on its own performance. Unfortunately, Verda Texas's 2027 Star Rating does not accurately reflect its quality as a Medicare Advantage plan.

21. When calculating Verda Texas's 2027 Overall Star Rating, CMS reported "not enough data," "Plan too new to be measured," or "No data available" for 13 of the 32 Part C measures. From among the 13 Part D data measures, CMS reported "Not enough data available" for one measure, and excluded another 2 measures from consideration as already counted under Part C. As a result, CMS calculated Verda Texas's 2027 Overall Star Rating even though it lacked reported ratings in 14 of the 43 measures used (33% of the total).

22. With one-third of the data measures missing, the remaining measures (which themselves barely met the threshold) took on additional weight. Even though Verda Texas received scores of 4 stars or 5 stars in six of the remaining measures that CMS scored, it received an overall Star Rating of 2 stars.

23. What is more, CMS calculated Verda Texas's Star Rating using measures that were outside of its statutory authority to consider and/or were issued without the required rulemaking procedure.

24. As a new plan, Verda Arizona did not receive its own Star Rating, but is treated as having the same inaccurate Star Rating as Verda Texas.

**B. <u>The Medicare Advantage Program</u>**

25. Medicare is the federal health insurance program administered by CMS providing coverage for Americans aged 65 and older, along with other qualifying individuals. *See* 42 U.S.C. § 1395 *et seq*.

26. Under "traditional" or "original" Medicare—Medicare Parts A and B—the federal government directly reimburses healthcare providers for services provided to enrolled beneficiaries.

27. Medicare Part C, also known as Medicare Advantage, functions differently. Under the Medicare Advantage program, the federal government enters into contracts with private health insurers, called Medicare Advantage Organizations, or MAOs. MAOs must provide at least the same level of services that Medicare beneficiaries would receive through traditional Medicare. *Id.* § 1395w-22(a). MAOs also commonly offer prescription drug coverage under Medicare Part D. Many MAOs also include additional benefits not covered by traditional Medicare, such as dental and vision benefits.

28. In return, CMS provides MAOs a monthly payment, which it determines by comparing the MAO's "bid" to a county "benchmark." MAOs submit their bids in June of each year by estimating the cost of providing core Medicare benefits for the upcoming plan year, inclusive of overhead and profit. The benchmark is the maximum amount the federal government will pay to provide coverage in the relevant county.

29. If an MAO's bid is below the benchmark, CMS pays the bid and returns a certain percentage of the difference between the bid and the benchmark as a "rebate," which the MAO can then use to help its enrollees by providing additional benefits or lowering premiums or cost sharing. *Id.* §§ 1395w-23(a)(1)(B)(i), (E); 1395w-24(b)(1)(C). On the other hand, if an MAO's bid is above the benchmark, CMS makes payments at the benchmark rate, and the MAO must charge enrollees an additional premium to cover the amount by which the bid exceeds the

benchmark. *Id.* § 1395w-23(a)(1)(B)(ii). For this reason, MAOs typically aim to bid meaningfully below the benchmark.

30. Each MAO is required to establish an "ongoing quality improvement program for the purpose of improving the quality of care provided to enrollees." *Id.* § 1395w-22(e)(1). Under these programs, each MAO "shall provide for the collection, analysis, and reporting of data that permits the measurement of health outcomes and other indices of quality." *Id.* § 1395w-22(e)(3).

## C. Star Ratings

31. CMS gives MAOs a "quality rating . . . determined according to a 5-star rating system" by considering various measures. *Id.* § 1395w-23(o)(4)(A). Star Ratings are released in October of each year, prior to the annual open enrollment period. For example, the Star Ratings released in October 2026 are known as the 2027 Star Ratings because they are public prior to the 2027 open enrollment period. Data underlying the 2027 Star Ratings was collected beginning in 2025, and the 2027 Star Ratings will impact payments to plans in 2028.

32. New plans—those offered by MAOs or their affiliates that have not had another Medicare Advantage plan in the previous three years—are not rated but are assigned a default rating, as are plans without enough data to be rated. 42 C.F.R. § 422.266(a)(2)(iv); *id.* § 422.252 (defining new plans). New contracts offered by MAOs or their affiliates that do have other contracts with a Star Rating are treated according to those other scores. *Id.* § 422.166(d)(2)(vi)(A).

33. Star Ratings set MAOs' payments in two ways. First, the quality bonus payment increases the benchmark by 5% for MAOs receiving a rating of four stars or higher. 42 U.S.C. §

1395w-23(o)(1)(C), (3)(A)(i). This means that a qualifying MAO bids against a higher benchmark, giving it larger rebates.

34. Second, higher-rated MAOs receive a larger portion of the difference between their bids and benchmarks as rebates. *Id.* § 1395w-24(b)(1)(C). MAOs with a rating of at least 4.5 stars receive a rebate of 70% of the difference between their bids and benchmarks, MAOs with a rating of 3.5 to 4 stars receive 65%, and MAOs with less than 3.5 stars receive 50%. 42 C.F.R. § 422.266(a)(2)(ii). This means that higher-rated MAOs may offer more benefits or lower premiums to their enrollees.

35. Thus, Star Ratings carry significant financial implications for MAOs. For example, the 2027 base benchmark in Harris county (one of the counties Verda Texas covers) is $1,410.21 per month per enrollee. For MAOs qualifying for the quality bonus payment, the benchmark is $1,484.43—an increase of nearly $900 per enrollee per year. The elevated benchmark gives higher-rated MAOs more room to bid and entitles them to higher rebates when their bids are below the benchmarks. Taken together, even a half-star change could result in millions of dollars in increased (or lost) funds for an MAO.

36. Moreover, Star Ratings impact MAOs' ability to recruit and retain enrollees. Star Ratings are a way MAOs can promote their quality and differentiate themselves from competitors. MAOs with higher Star Ratings therefore have a significant advantage in these marketing efforts.

37. CMS publishes Star Ratings in its online "Medicare Plan Finder." Prospective enrollees often use this online tool to choose their plan. CMS also publishes Star Ratings in

printed material that beneficiaries rely upon to make their choices. A low Star Rating is likely to dissuade someone from selecting a certain plan.

38. CMS also flags plans it considers to be "low performing," meaning plans with a summary rating of 2.5 or lower over three years of data. These plans are identified with a bright red triangle with an exclamation point, similar to a caution sign, warning beneficiaries they may want to reconsider enrolling in that plan.

39. Star Ratings may determine whether an MAO is even permitted to participate in the program at all. CMS is permitted to terminate the contract of any MAO that achieves a Star Rating lower than 3 stars for three consecutive contract years.

40. Star Ratings "shall be . . . based on data" collected pursuant to an MAO's quality improvement plan. 42 U.S.C. § 1395w-23(o)(4).

41. Because Star Ratings represent a "rule, requirement, or statement of policy" that "establishes or changes a substantive legal standard governing the scope of benefits, the payment for services, or the eligibility of individuals, entities, or organizations to furnish or receive services or benefits," changes to Star Rating criteria must be promulgated "by regulation." *Id.* § 1395hh(a).

42. Additionally, pursuant to its own regulations, CMS must "announce potential new measures and solicit feedback through the process described for changes in and adoption of payment and risk adjustment policies in section 1853(b) of the Act [42 U.S.C. § 1395w-23] and then subsequently [] propose and finalize new measures through rulemaking." 42 C.F.R. § 422.164(c)(2); *see also id.* § 423.184(c)(2) (same procedure for Part D). Substantive updates to

existing measures must also be made "through rulemaking similar to the process for adding new measures." *Id.* § 422.164(d)(2); *id.* § 423.184(d)(2) (same procedure for Part D).

43. In practice, however, when determining an MAO's yearly Star Rating, CMS considers more than 40 distinct "measures," which may change from year to year. CMS published the specifications for the measures in its annual Technical Notes, but not in the Code of Federal Regulations. And CMS did not promulgate the measures' specifications through the mandated notice-and-comment rulemaking process.

44. CMS will determine and display a rating for each measure for which there is "sufficient data to calculate and assign ratings." *See id*. § 422.166(h). CMS then assigns a Part C and Part D summary Star Rating where the plan contract has scores for at least 50% of the measures, and an overall rating where the contract has both a Part C and Part D summary rating. *See id*. § 422.166(b)(2)(i) (for domain rating calculations); *id.* § 422.166(c)(2)(i) (for Part C summary rating); *id.* § 422.166(d)(2)(i) (for overall MA-PD rating).

45. Although CMS finalized the 50% threshold in 2019, *see* 83 Fed. Reg. 16,440, CMS has never adequately explained why it set the threshold for assigning a Star Rating where any plan has scores for at least 50% of the measures. Under the CMS policy, health plans that have insufficient data for up to 49% of the measures will nevertheless be assigned a Star Rating based on the remaining measures. Calculating a Star Rating where nearly half of the measures do not exist results in a Star Rating that is at best incomplete and (more likely) misleading.

**D. <u>The *Clover* Decision</u>**

46. On May 27, 2026, a federal district court recognized that CMS unlawfully relied on certain measures when determining Star Ratings because they were outside of CMS's

statutory authority and promulgated without notice-and-comment. *Clover Ins. Co. v. U.S. Dep't of Health & Human Servs.*, No. 2:25-cv-00142, 2026 WL 1483515 (S.D. Ga. May 27, 2026).[1]

47. Specifically, an MAO, Clover Insurance Company, challenged its 2026 Star Rating because it was calculated using measures that were not "based on data collected under 42 U.S.C. § 1395w-22(e)" and measures that were not established under "the required 'notice and comment' rulemaking procedure." *Id.* at *8, *22.

48. The *Clover* court first construed 42 U.S.C. § 1395w-23(o)(4), which provides that "[t]he quality rating for a plan shall be determined according to a 5-star rating system (*based on the data collected under section 1395w-22(e)* of this title)." *Id.* at *8 (emphasis added by court). Section 1395w-22(e), in turn, refers "to data collected pursuant to plans' 'quality improvement program[s],' under which 'each MA organization shall provide for the collection, analysis, and reporting of data that permits the measurement of health outcomes and other indices of quality.'" *Id.* (brackets in original).

49. After conducting a thorough statutory analysis, the court agreed with Clover that "Section 1395w-23(o)(4)(A) is best read as mandating that CMS consider *only* data collected pursuant to Section 1395w-22(e) in the Star Rating calculus; CMS *may not* consider measures based on non-Section 1395w-22(e) data in this inquiry." *Id.* at *10 (emphases in original). The court observed that the statute set forth what "data should be the basis for quality ratings"; Congress pointedly *did not* write "a clause giving the Secretary discretion to consider other data

---

[1] *Clover* is now on expedited appeal before the 11th Circuit, with briefing set to be completed by November 20, 2026, and argument tentatively scheduled for the week of January 18, 2027. No. 26-12553, Dkt. Nos. 15, 19.

he or she deems fit in quality rating determinations." *Id.* at *14. Accordingly, CMS erred in considering 10 measures when setting Clover's 2026 Star Rating.[2]

50. The *Clover* court then turned to 42 U.S.C. § 1395hh(a)(2), which provides that "[n]o rule, requirement, or other statement of policy (other than a national coverage determination) that establishes or changes a substantive legal standard governing the scope of benefits, the payment for services, or the eligibility of individuals, entities, or organizations to furnish or receive services or benefits under this subchapter shall take effect unless it is promulgated by the Secretary by regulation." Star Ratings reflect a "statement of policy" because they "'let the public know [the agency's current adjudicatory approach] to a critical question involved in calculating' ratings for Medicare Advantage plans nationwide." *Id.* at *22 (brackets in original) (quoting *Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 94 (D.C. Cir. 1997)). Further, the Star Rating calculation qualified as a "'substantive legal standard' which is established or changed by measure specifications" because it defines "the scope of MAOs' legal rights to rebates by impacting the percent of per capita savings a plan can receive" and "governs payment for services." *Id.* at *22-23. "Star Ratings measure specifications govern the payment for services because they serve as a 'deciding principle' for such payments." *Id.* at *24 (citing Webster's III New Int'l Dictionary). The court held that Star Rating measures therefore trigger "the notice-

[2] Clover challenged the following 10 measures on this basis: Medication Adherence, Diabetes (D08); Medication Adherence, Hypertension (D09); Medication Adherence, Cholesterol (D10); Phone Call Center (C33); Phone Call Center (D01); Appeals Decisions (C32); Rating of Drug Plan (D05); Getting Needed Drugs (D06); Medication Therapy Management Completion (D11); and Pharmacy Statin Use (D12).

and-comment requirements in Section 1395hh(a)(2)." *Id.* at *25.[3] Thus, CMS calculated Clover's 2026 Star Rating using another 10 invalid measures.[4]

**E. <u>The Unlawful 2027 Star Ratings Harm Verda</u>**

51. Verda Texas and Verda Arizona are high-quality Medicare Advantage Organizations that are growing their membership. When Verda Texas began offering benefits in 2024, CMS assigned it a default rating as a new plan. Verda Texas did not have sufficient data to be given a 2026 Star Rating. In 2027, Verda Texas received its first Star Rating, based on the scarce available data. As a new plan, Verda Arizona did not receive a 2027 Star Rating of its own, but for payment purposes is treated as having the Star Rating of its sibling plan, Verda Texas.

52. Both Verda Texas and Verda Arizona have worked hard and invested significant capital to demonstrate the quality of their health plans and ensure that their Star Ratings fairly reflect the plans' quality and the experience of their members.

53. Prior to 2027, neither Verda Texas nor Verda Arizona had received a Star Rating. But in 2027, CMS published an unlawful Star Rating for Verda Texas based on measures that (a) bypassed notice-and-comment rulemaking, (b) were beyond those authorized by statute, and (c) represented only two-thirds of the total measures.

---

[3] Given the applicability of 42 U.S.C. § 1395hh(a)(2), the court did not have occasion to address Clover's argument that the Star Rating measures also trigger regulatory notice-and-comment procedures. *Id.* at *25 n.20.

[4] Clover challenged the following 10 measures on this ground: Improving Mental Health (C05); Reducing Falling (C15); Getting Needed Care (C22); Rating of Health Care Quality (C25); Care Coordination (C27); Improving Bladder Control (C16); Annual Flu Vaccine (C03); Improving Physical Health (C04); Getting Care Quickly (C23); and Customer Service (C24).

54. The result of these unlawful actions is that Verda Texas has been assigned a 2027 Star Rating of 2 stars, and Verda Arizona will be treated as having that same rating. These ratings do not reflect the quality of Verda Texas, nor the experiences of its members. The ratings will have potentially devastating consequences for Verda Texas and Verda Arizona, which, absent the Court's intervention, will be assigned the same rating as its sibling plan, Verda Texas.

55. As a result of the erroneous 2.0 Star Rating, Verda Texas is projected to suffer approximately $18.4 million in annual Part C revenue losses, driven by both lower CMS benchmark payments and a reduction in rebate percentages otherwise available to unrated plans.

56. As a result of the erroneous 2.0 Star Rating, Verda Arizona is projected to suffer approximately $2.0 million in annual Part C revenue losses, driven by both lower CMS benchmark payments and a reduction in rebate percentages otherwise available to unrated plans.

57. Beyond the direct monetary impact, the 2027 Star Rating has caused millions of dollars in losses from harm to Verda's reputation and its ability to grow as an organization. Potential enrollees reviewing the Medicare Plan Finder are unlikely to choose Verda Texas based on its inaccurate Star Rating. Verda Texas estimates losing out on thousands of members who would otherwise have enrolled. The Star Rating also tarnished Verda's reputation as an organization, hindering its efforts to contract with new providers and enrich its network.

58. Verda Texas is at risk of being labeled a "low performing" plan on the Medicare Plan Finder if it continues to receive Star Ratings of 2.5 or lower over three years of data, discouraging beneficiaries from enrolling.

59. Verda Texas is also at risk of CMS terminating its contract if it is awarded Star Ratings lower than 3 stars for three consecutive years.

60. To remedy Defendants' unlawful actions, the Court should vacate and set aside the unlawful Star Rating for Verda Texas. Because there is no data that CMS can lawfully use to issue Verda Texas a 2027 Star Rating, the Court should direct CMS to assign Verda Texas no rating. *See* 42 C.F.R. § 422.166(d)(2)(vi)(B). Under CMS guidance, Verda Texas would be assigned CMS's default rating for new plans and plans without enough data to be rated for 2027 for purposes of its quality bonus program. *See e.g.*, 86 Fed. Reg. 5864-01 (describing that "if there were no MA contract(s) in the parent organization with numeric Star Ratings in the previous 3 years, the contract is rated as a new MA plan in accordance with § 422.258 (for QBP purposes) and § 422.166(d)(2)(v) (for other purposes)").

61. Because Verda Arizona's quality bonus payments depend on Verda Texas's Star Rating, the Court should also direct CMS to treat Verda Arizona as a new plan or plan that cannot be rated for purposes of its 2027 quality bonus program.

62. Under CMS regulations, as new plans, Verda Texas and Verda Arizona would receive a quality payment of 3.5%, *see id.* § 422.258(d)(7) (directing that new plans receive an increase in their benchmark payments of 3.5%), and a rebate percentage of 65% of the average per capita savings. *See id.* § 422.266(a)(2)(ii)(c) & (iv).

## CAUSES OF ACTION

### COUNT I
### Administrative Procedure Act, 5 U.S.C. § 706(2)
### Action without Observance of Procedure Required by Law and Not in Accordance with Law

63. Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

64. Defendants' actions constitute "[a]gency action made reviewable by statute," as well as "final agency action for which there is no other adequate remedy in a court," 5 U.S.C. § 704, and are therefore subject to judicial review. *Id.* §§ 702, 704.

65. Under the APA, courts are to hold unlawful and set aside agency actions that are "without observance of procedure required by law." *Id.* § 706(2)(D).

66. Congress requires that before promulgating any "rule, requirement, or other statement of policy . . . that establishes or changes a substantive legal standard governing the scope of benefits, the payment for services, or the eligibility of individuals, entities, or organizations to furnish or receive services or benefits under [Medicare]," 42 U.S.C. § 1395hh(a)(2), CMS must promulgate a regulation preceded by "notice of the proposed regulation in the Federal Register and a period of not less than 60 days for public comment." *Id.* § 1395hh(b)(1).

67. The measures and specifications that CMS uses for determining Star Ratings are requirements that establish substantive legal standards regarding payments for services.

68. Defendants considered Star Rating measures or specifications that were not codified "by regulation," and that did not go through the required notice-and-comment process.

69. Defendants' failure to comply with notice-and-comment rulemaking resulted in unlawful 2027 Star Ratings for Verda Texas and Verda Arizona, which have caused and will continue to cause Plaintiffs to suffer ongoing and irreparable harm.

70. The Court should vacate and set aside the unlawful 2027 Star Rating for Verda Texas (Contract No. H5163), which relied on Star Rating measures and specifications without notice-and-comment rulemaking.

71. Because there is no data that CMS (or the Court) can lawfully use to issue Verda Texas a 2027 Star Rating, the Court should direct CMS to assign Verda Texas no rating. *See* 42 C.F.R. § 422.166(d)(2)(vi)(B). Under CMS guidance, Verda Texas must be treated under CMS's default rules for new plans and plans that cannot be rated for purposes of its quality bonus program. *See* 86 Fed. Reg. 5864-01 (describing that "if there were no MA contract(s) in the parent organization with numeric Star Ratings in the previous 3 years, the contract is rated as a new MA plan in accordance with § 422.258 (for QBP purposes) and § 422.166(d)(2)(v) (for other purposes)").

72. Because Verda Arizona (Contract No. H2630) does not have sufficient data to determine its own Star Rating, it is also assigned the same default ratings. *See id.* § 422.166.

**COUNT II**

**Administrative Procedure Act, 5 U.S.C. § 706(2)**
**Agency Action Contrary to Statute**

73. Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

74. Defendants' actions constitute "[a]gency action made reviewable by statute," as well as "final agency action for which there is no other adequate remedy in a court," 5 U.S.C. § 704, and are therefore subject to judicial review. *Id.* §§ 702, 704.

75. Under the APA, courts are to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," *id.* § 706(2)(C), or "otherwise not in accordance with law." *Id.* § 706(2)(A).

76. By statute, CMS may calculate a Medicare Advantage plan's Star Rating based on data collected, analyzed, and reported through the plan's quality improvement program. *See* 42 U.S.C. § 1395w-23(o)(4)(A) (requiring Star Ratings to be based on "data collected under section 1395w-22(e) of this title").

77. Despite this statutory command, CMS calculated the 2027 Star Ratings for Verda Texas (Contract No. H5163) using measures that are based on data not collected under § 1395w-22(e).

78. In particular, CMS calculated the Star Rating using measures C07, C27, C28, C29, C30, C31, C32, D01, D02, D03, D04, D07, D08, D09, D10, D11, D12, and D13, all of which use data generated outside the HEDIS, HOS, and CAHPS quality rating programs established under § 1395w-22(e). These are each administrative data measures, rather than survey measures that Congress authorized as the basis for Star Ratings.

79. Because CMS calculated the 2027 Star Ratings for Verda Texas based on data not collected under § 1395w-22(e), the Court should set aside the unlawful 2027 Star Rating for Verda Texas.

80. Defendants' failure to comply with the statute's requirements for determining Star Ratings resulted in unlawful Star Ratings for Verda Texas and Verda Arizona, which have caused and will continue to cause Plaintiffs to suffer ongoing and irreparable harm.

81. With only two Part D measures remaining after discarding the data that are not from programs established under § 1395w-22(e), the Court should direct CMS to assign no rating to Verda Texas. *See* 42 C.F.R. § 422.166(d)(2)(vi)(B). Under CMS guidance, Verda Texas must be treated under CMS's default rules for new plans and plans that cannot be rated for

purposes of its quality bonus program. *See* 86 Fed. Reg. 5864-01 (describing that "if there were no MA contract(s) in the parent organization with numeric Star Ratings in the previous 3 years, the contract is rated as a new MA plan in accordance with § 422.258 (for QBP purposes) and § 422.166(d)(2)(v) (for other purposes)").

82. Because Verda Arizona (Contract No. H2630) does not have sufficient data to determine its own Star Rating, it is also assigned the same default ratings. *See* 42 C.F.R. § 422.166.

**COUNT III**

**Administrative Procedure Act, 5 U.S.C. § 706(2)**
**Arbitrary and Capricious**

83. Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

84. Defendants' actions constitute "[a]gency action made reviewable by statute," as well as "final agency action for which there is no other adequate remedy in a court," 5 U.S.C. § 704, and are therefore subject to judicial review. *Id.* §§ 702, 704.

85. The APA directs courts to hold unlawful and set aside agency actions that are found to be "[a]rbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A).

86. Agency action is arbitrary or capricious where it is not "reasonable and reasonably explained." *Ohio v. EPA*, 603 U.S. 279, 292 (2024) (quotation omitted). This standard requires that agencies provide "a satisfactory explanation for its action[,] including a

rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quotation omitted).

87. CMS's assignment of Star Ratings where there is insufficient data in up to 49% of the measures, 42 C.F.R. § 422.166(d)(2)(i), is arbitrary and capricious because CMS failed to provide a reasoned explanation for calculating Star Ratings where so much data is missing.

88. Defendants' actions are arbitrary and capricious because the decision to undertake them was not objectively reasonable and Defendants failed to provide a reasoned explanation for that decision.

89. Because CMS calculated the 2027 Star Ratings for Verda Texas relying on CMS's arbitrary and capricious policy to calculate Star Ratings where up to 49% of the measures were not present, the Court should set aside the unlawful 2027 Star Rating for Verda Texas.

90. Defendants' failure to comply with the statute's requirements for determining Star Ratings resulted in unlawful Star Ratings for Verda Texas and Verda Arizona, which have caused and will continue to cause Plaintiffs to suffer ongoing and irreparable harm.

91. Because there is not sufficient data that CMS (or the Court) can lawfully use to issue Verda Texas a 2027 Star Rating, the Court should direct CMS to assign Verda Texas no rating. *See* 42 C.F.R. § 422.166(d)(2)(vi)(B). Under CMS guidance, Verda Texas must be treated under CMS's default rules for new plans and plans that cannot be rated for purposes of its quality bonus program. *See* 86 Fed. Reg. 5864-01 (describing that "if there were no MA contract(s) in the parent organization with numeric Star Ratings in the previous 3 years, the contract is rated as a new MA plan in accordance with § 422.258 (for QBP purposes) and § 422.166(d)(2)(v) (for other purposes)").

92. Because Verda Arizona (Contract No. H2630) does not have sufficient data to determine its own Star Rating, it is also assigned the same default ratings. *See id.* § 422.166.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Verda Healthcare, Inc., Verda Health Plan of Texas, Inc., and Verda Health Plan of Arizona, Inc. pray for relief and judgment against Defendants, respectfully requesting that the Court:

A. Enter judgment against Defendants and in favor of Plaintiffs for each count in the complaint; and

B. Vacate and set aside the 2027 Medicare Advantage Star Rating for Verda Health Plan of Texas, Inc.; and

C. Order Defendants to treat Verda Health Plan of Texas, Inc., and Verda Health Plan of Arizona, Inc. as plans assigned a default rating for purposes of the 2027 Star Ratings, with quality payments of 3.5% and a rebate percentage of 65% of the average per capita savings; and

D. Enter a temporary restraining order, along with a preliminary and permanent injunction, barring Defendants from re-issuing the 2027 Star Rating to Verda Health Plan of Texas, Inc.; and

E. Enter an order, pursuant to 5 U.S.C. § 706, holding that the 2027 Star Rating for Verda Health Plan of Texas, Inc. is unlawful; without observance of procedure required by law; contrary to law; and arbitrary and capricious; and

F. Issue a declaration, pursuant to 28 U.S.C. § 2201, that Defendants' issuance of the 2027 Star Rating to Verda Health Plan of Texas, Inc. is contrary to federal statute and regulations; and

G. Award such additional relief as may be just and proper.

November 6, 2026

Respectfully submitted,

VERDA HEALTHCARE, INC., VERDA HEALTH PLAN OF TEXAS, INC., AND VERDA HEALTH PLAN OF ARIZONA, INC.

By: */s/ Adam Finkelstein*
Adam Finkelstein (DC Bar No. 198684)
MANATT, PHELPS & PHILLIPS, LLP
1700 M Street NW, Fourth Floor
Washington, DC 20036
Tel: (202) 585-6500
AFinkelstein@Manatt.com

Eric M. Gold*
Max A. Jacobs*
MANATT, PHELPS & PHILLIPS, LLP
1 Beacon Street, 11th Floor
Boston, Massachusetts 02108
Tel: (617) 646-1400
EGold@Manatt.com
MJacobs@Manatt.com

*pending *pro hac vice* motion